UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

UNITED STATES OF AMERICA

    v.                       CASE NO. 5:16-cr-37-Oc-37PRL

MARK ANTHONY PRACK

### UNITED STATES' RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE

As outlined herein, the United States opposes Mark Anthony Prack's motion for compassionate release, pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). Prack, a multi-convicted felon in state and federal court, has failed to meet his burden of proof to establish that he is eligible for compassionate release—he has not exhausted his administrative remedies; he has not demonstrated an extraordinary and compelling reason for a sentencing reduction; the § 3553(a) factors weigh against his release; and he remains a danger to society.

## I.   Summary of Law

The authority of a district court to modify an imprisonment sentence is narrowly limited by statute.[1] "Generally, a [district] court 'may not modify a term of imprisonment once it has been imposed.'"[2]

One of the limited exceptions to this prohibition on the modification of a sentence of imprisonment is provided in 18 U.S.C. § 3582(c)(1)(A), which states:

---

[1] *See United States v. Phillips*, 597 F.3d 1190, 1194-95 (11th Cir. 2010).

[2] *See United States v. Pubien*, 805 F. App'x 727 (11th Cir. 2020) (quoting 18 U.S.C. § 3582(c)).

(c) Modification of an imposed term of imprisonment.—The court may not modify a term of imprisonment once it has been imposed except that—

(1) in any case—

(A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—

 (i) extraordinary and compelling reasons warrant such a reduction . . . .

 . . . .

and the reduction is consistent with the applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(1A)(i).

Under the Sentencing Guidelines, the court "may reduce a term of imprisonment . . . if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent they are applicable, the court determines that . . . extraordinary and compelling reasons warrant a reduction."[3]  In assessing a reduction, courts are strongly warned that a reduction in sentence should only occur if the "defendant is not a danger to the safety of any other person or to

---

[3] U.S. Sentencing Guidelines Manual § 1B1.13 (U.S. Sentencing Comm'n 2018).

2

the community." *Id.* General concerns about the possible exposure to COVID-19 do not meet the criteria for an "extraordinary and compelling reason" to reduce a defendant's sentence.[4]

In essence, a compassionate release reduction pursuant to 18 U.S.C. § 3582(c)(1)(A) only can occur where the court finds that the defendant has exhausted all administrative remedies through the BOP; extraordinary and compelling circumstances warrant the release; the § 3553(a) factors weigh in favor of release; *and* the defendant is not a danger to the safety of any other person or to the community.[5] Importantly, the burden of establishing eligibility for compassionate release *rests entirely with the defendant*. *United States v. Hamilton*, 715 F.3d 328, 337 (11th Cir. 2013) (emphasis supplied). Even if established, the district court still retains the discretion to determine whether the sentencing reduction is warranted. *Id.*

## II.  Background.

This Court sentenced Prack to 60 months' imprisonment after he pleaded guilty to possession of a firearm affecting interstate and foreign commerce by a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). Doc. 56. Prack is currently incarcerated at Coleman Low FCI in Sumterville, FL; he is thirty-nine years old, and he is projected to be released

---

[4] *See United States v. Eberhart*, No. 13-cr-313-PJH-1, 2020 WL 1450745, at *2 (N.D. Cal. Mar 25, 2020).

[5] *See United States v. Stuyvesant*, No. 09-60184-CR, 2020 WL 1865771, at *2 (S.D. Fla. Apr 14, 2020) (emphasis supplied).

on December 16, 2021.[6]  On September 5, 2020, Prack filed a motion for compassionate release relying on the threat posed by the COVID-19 pandemic. Doc. 64.

The United States is cognizant of inmate concerns stemming from the COVID-19 pandemic. Neither the United States, nor the BOP, minimize the concern or risk; this unique situation is being diligently monitored. The BOP has taken aggressive action to mitigate the effects of COVID-19, and has been taking proactive steps to prevent potential coronavirus transmissions for months. As detailed below, the United States opposes Prack's requested relief.

## III.   The BOP's response to COVID-19.

To aid this Court in its consideration of Prack's motion, the following is a summary of the significant measures that the BOP has taken in response to the COVID-19 pandemic, to protect the health of the inmates in its care.

The BOP has had a Pandemic Influenza Plan in place since 2012. Attachment A. Consistent with that plan, the BOP began planning for potential coronavirus transmissions in January 2020 by establishing a working group to develop policies in consultation with subject matter experts in the CDC, including by reviewing guidance from the World Health Organization.

On March 13, 2020, the BOP began to modify its operations, in accordance with its Coronavirus ("COVID-19") Action Plan ("Action Plan"),

---

[6] *See* BOP Inmate Locator at https://www.bop.gov/inmateloc/ (September 17, 2020).

to minimize the risk of COVID-19 transmission into and inside its facilities.

Since that time, as events require, BOP has repeatedly revised the Action Plan

to address the crisis. Phase Five of the Action Plan, which currently governs

operations, was implemented on April 1, 2020. Attachment B.

The current modified operations plan limits group gatherings, with

attention to social distancing to the extent possible, to facilitate commissary,

laundry, showers, telephone, and computer access. Additionally all staff and

inmates have been and will continue to be issued face masks. Every newly

admitted inmate is screened for COVID-19 exposure risk factors and

symptoms. Asymptomatic inmates with risk of exposure or symptomatic

inmates, are accordingly either quarantined for a minimum of 14 days or

placed in isolation until they test negative for COVID-19, or are cleared by

medical staff after meeting CDC guidelines. In areas with sustained

community transmission, all facility staff are screened for symptoms.

Additionally, social visits have been suspended since March 13, 2020, in order

to limit the number of people entering the facility and interacting with

inmates. Legal visits are permitted on a case-by-case basis after the attorney

has been screened for infection in accordance with the prison's protocols.

## IV. As part of its response to COVID-19, the BOP may designate certain inmates to a term of home confinement.

To relieve the strain on BOP facilities and assist inmates who are most

vulnerable to the disease and are the least threat to the community, the BOP is

exercising greater authority to designate such inmates for home confinement.

On March 26, 2020, the Attorney General directed the Director of the Bureau of Prisons, to consider the totality of the circumstances of each inmate and to use statutory authority to place prisoners in home confinement.[7] On April 3, 2020, the Attorney General gave the BOP Director the authority to exercise this discretion, beginning at the facilities that have seen the greatest incidence of coronavirus transmission.[8] All of these measures are designed to sharply mitigate the risks of COVID-19 in BOP institutions.

The BOP must consider its concern for the health of its inmates and staff alongside other critical considerations. Notwithstanding the current pandemic crisis, the BOP must carry out its charge to incarcerate sentenced criminals to protect the public. It must consider the effect of a mass release on the safety and health of both the inmate population and the citizenry.

**V.   The legal framework of Prack's home-detention request.**

Prack has asked that this Court order the BOP to place him on home confinement. That request must be denied because this Court has no authority to direct the BOP to place a defendant in home confinement—such decisions are solely up to the BOP's discretion.[9] Once a court imposes a sentence, the BOP alone is responsible for determining an inmate's place of incarceration to

---

[7] *See* 18 U.S.C. § 3624(c)(2); 34 U.S.C. § 60541(g).

[8] *See* April 3, 2020 Memorandum to Director of Bureau of Prisons.

[9] *See United States v. Calderon*, No. 19-11445, 2020 WL 883084, at *1 (11th Cir. Feb. 24, 2020) (district courts lack jurisdiction to grant early release to home confinement pursuant to Second Chance Act, 34 U.S.C. § 60541(g)(1)(A)).

serve that sentence.[10]  A court has no authority to designate a prisoner's place of incarceration.[11]  Prack's request for home confinement alters only the place of incarceration, not the actual term of incarceration, therefore only the BOP may consider his request.

Moreover, neither the Constitution nor statute allows the Court to order home confinement. A prisoner has no constitutional right to confinement in any particular place, including in home confinement.[12]  Following the imposition of sentence, courts have limited jurisdiction to correct or modify that sentence absent specific circumstances enumerated by Congress in 18 U.S.C. § 3582. *United States v. Diaz-Clark*, 292 F.3d 1310, 1319 (11th Cir. 2002). Section 3582(c) contemplates only a reduction in sentence. *See* § 3582(c). Prack's request to serve the rest of his term in home confinement, as opposed to prison, works no reduction to his sentence—it merely permits the inmate to serve out his term of imprisonment at home. Prack's request for such relief

---

[10]  *See* 18 U.S.C. § 3621(b); *Moore v. United States Att'y Gen.*, 473 F.2d 1375, 1376 (5th Cir. 1973) (per curiam); *see also McKune v. Lile*, 536 U.S. 24, 39 (2002) (plurality opinion) ("It is well settled that the decision where to house inmates is at the core of prison administrators' expertise.").

[11]  *See Tapia v. United States*, 564 U.S. 319, 331 (2011) ("[a] sentencing court can recommend that the BOP place an offender in a particular facility or program … [b]ut decision making authority rests with the BOP."); 18 U.S.C. § 3621(b) ("The Bureau of Prisons shall designate the place of the prisoner's imprisonment[.]").

[12]  *See Sandin v. Conner*, 515 U.S. 472, 478 (1995) ("the Due Process Clause did not itself create a liberty interest in prisoners to be free from intrastate prison transfers."); *Meachum v. Fano*, 427 U.S. 215, 224 (1976) ("The conviction has sufficiently extinguished the defendant's liberty interest to empower the State to confine him in *any* of its prisons.").

therefore falls outside § 3582(c)'s limited grant of authority to this Court to modify a sentence post-conviction. Because section 3582(c) deprives this Court of jurisdiction to grant home confinement and because Prack offers no other statutory authority to support his request for such relief, this Court has no authority to act on his request for home confinement.

**VI.**   **The legal framework of Prack's compassionate release request.**

A court may reduce a term of imprisonment upon finding "extraordinary and compelling circumstances," consistent with applicable policy statements of the Sentencing Commission. 18 U.S.C. § 3582(c)(1)(A). Under the statute, as amended by Section 603(b) of the First Step Act, the Court may act "upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier."

Examples of qualifying "extraordinary and compelling reasons" include (1) terminal illness; (2) a serious medical condition that substantially diminishes the ability of the defendant to provide self-care in prison; or (3) the death of the caregiver of the defendant's minor children. *See* USSG §1B1.13 comment. (n.1). Even when an extraordinary and compelling reason exists, however, a court should only grant a motion for release if it determines that the defendant is not a danger to the public. USSG §1B1.13(2). And the court

8

must consider, in general, whether the 18 U.S.C. § 3553(a) factors weigh in favor of release. *See* 18 U.S.C. § 3582(c)(1)(A); USSG §1B1.13.

Previously, only the BOP could file a motion for compassionate release. The First Step Act amended the provision to allow defendants to file such a motion as well. *See* First Step Act of 2018, 115 P.L. 391, § 603(b)(1). Before a defendant may file a motion, however, the defendant must have either (a) "fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf," or (b) 30 days must have lapsed since the receipt of such a request by the warden of the prison. 18 U.S.C. § 3582(c)(1)(A). The failure to have exhausted administrative remedies within the BOP is fatal to a defendant's motion for compassionate release.[13]

An inmate may appeal the Warden's compassionate-release denial through BOP's administrative remedies program. 28 C.F.R § 571.63(a). Here, Prack has failed to exhaust his administrative remedies. Attachment C. The attached BOP records reflect that Prack filed a request for compassionate

---

[13] *See United States v. Raia*, No. 20-1033, 2020 WL 1647922, at *2 (3rd Cir. Apr. 2, 2020) (published) (per curiam) ("Given BOP's shared desire for a safe and healthy prison environment, we conclude that strict compliance with § 3582(c)(1)(A)'s exhaustion requirement takes on added—and critical—importance."); *see also United States v. Estrada Elias*, No. 6: 06-096-DCR, 2019 WL 2193856, at *2 (E.D. Ky. May 21, 2019); *accord United States v. Elgin*, Case No. 2:14-cr-129-JVB-JEM, 2019 U.S. Dist. LEXIS 86571, *2–3 (N.D. Ind. May 23, 2019); *cf. United States v. Leverette*, 721 F. App'x 916, 917 (11th Cir. 2018) (exhaustion of BOP remedies is requisite for judicial review under 28 U.S.C. § 2241); *United States v. Roberson*, 746 F. App'x 883, 885 (11th Cir. 2018) (same); *United States v. Alexander*, 609 F.3d 1250, 1260 (11th Cir. 2010) (same).

release on May 21, 2020, which the warden timely denied on May 26, 2020. Attachments D, E. This denial has not been administratively appealed. Attachment C. This Court should not entertain Prack's motion for compassionate release absent that appeal (or after 30-day lapse from such an appeal). *Elgin*, 2019 U.S. Dist. LEXIS 86571, at *3. Only a denial at the level of either the BOP's director or general counsel constitutes a "final administrative decision" that may not be further appealed within the administrative remedies program, 28 C.F.R. § 571.63(b), (d). Therefore, absent a final administrative decision, an inmate has failed to exhaust his administrative remedies as required by 18 U.S.C. § 3582(c)(1)(A). Prack has not met his exhaustion or delay requirements.

**VII.   Prack has not identified extraordinary and compelling reasons for compassionate release.**

In any event, Prack's request for a sentence reduction should be denied because he has not demonstrated "extraordinary and compelling reasons" warranting release. As explained above, under the relevant provision of section 3582(c), a court can grant a sentence reduction only if it determines that "extraordinary and compelling reasons" justify the reduction and that "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i). The Sentencing Commission's policy statement defines "extraordinary and compelling reasons" to include, as relevant here, certain specified categories of medical conditions. USSG § 1B1.13, cmt. n.1(A). As discussed below, potential

10

COVID-19 exposure is not an extraordinary and compelling reason to grant release under any circumstances.

To state a cognizable basis for a sentence reduction based on a medical condition, a defendant first must establish that a condition that falls within one of the categories listed in the policy statement. Those categories include, as particularly relevant here, (i) any terminal illness, and (ii) any "serious physical or medical condition … that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." USSG §1B1.13, cmt. n.1(A). If a defendant's medical condition does not fall within one of the categories specified in the application note (and no other part of the application note applies), the motion must be denied.

The mere existence of the COVID-19 pandemic—which poses a general threat to every non-immune person in the country—does not fall into either of those categories and therefore could not alone provide a basis for a sentence reduction. The categories encompass specific serious medical conditions afflicting an individual inmate, not generalized threats to the entire population. As the Third Circuit has held, "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release."[14] To classify COVID-19

---

[14] *See Raia*, 2020 WL 1647922 at *2; *see also United States v. Gileno*, No. 3:19-cr-161-(VAB)-1, 2020 WL 1307108, at *4 (D. Conn. Mar. 19, 2020) (denying compassionate release because BOP's proposed plan adequately addresses the

as an extraordinary and compelling reason would not only be inconsistent with the text of the statute and the policy statement, but would be detrimental to the BOP's organized and comprehensive anti-COVID-19 regimens, could result in the scattershot treatment of inmates, and would undercut the strict criteria BOP employs to determine individual inmates' eligibility for sentence reductions and home confinement. Section 3582(c)(1)(A) contemplates sentence reductions for specific individuals, not the widespread prophylactic release of inmates and the modification of lawfully imposed sentences to deal with a world-wide viral pandemic. Courts have generally recognized that "it is a rare case in which health conditions present an 'exceptional reason'" to allow for release where detention otherwise would be warranted.[15]

In is motion, Prack has asserted that he suffers from hypertension and

---

COVID-19 pandemic)*; e.g.*, *United States v. Coles*, 2020 WL 1899562 (E.D. Mich. Apr. 17, 2020) (denied for 28-year-old inmate at institution with outbreak); *United States v. Okpala*, 2020 WL 1864889 (E.D.N.Y. Apr. 14, 2020); *United States v. Weeks*, 2020 WL 1862634 (S.D.N.Y. Apr. 14, 2020); *United States v. Haney*, 2020 WL 1821988 (S.D.N.Y. Apr. 13, 2020) (denied for 61-year-old with no other conditions); *United States v. Pinto-Thomaz*, 2020 WL 1845875 (S.D.N.Y. Apr. 13, 2020) (two insider trading defendants with less than a year to serve have no risk factors); *United States v. Korn*, 2020 WL 1808213, at *6 (W.D.N.Y. Apr. 9, 2020) ("in this Court's view, the mere *possibility* of contracting a communicable disease such as COVID-19, without any showing that the Bureau of Prisons will not or cannot guard against or treat such a disease, does not constitute an extraordinary or compelling reason for a sentence reduction under the statutory scheme."); *United States v. Carver*, 2020 WL 1892340 (E.D. Wash. Apr. 8, 2020).

[15] *See United States v. Wages*, 271 Fed. App'x 726, 728 (10th Cir. 2008) (considering pretrial detention). A defendant seeking compassionate release bears the burden of establishing that release is warranted. *United States v. Heromin*, 8:11-cr-550-T-33SPF, 2019 WL 2411311, at *2 (M.D. Fla. June 7, 2019) (J. Covington); *cf. Hamilton*, 715 F.3d at 337 (holding that a movant for a reduction under section 3582(c)(2) bears the burden to establish a reduction is warranted).

type II diabetes, and that those conditions make him more vulnerable to becoming seriously ill should he contract COVID-19. Doc. 64 at 10-14. Those contentions however, do not establish "extraordinary and compelling reasons" for a sentence reduction under § 3582(c)(1)(A).

First, Prack is thirty-nine years old, which does not place him in the CDC's high-risk age category of people sixty-five years old and up.[16]

Second, Prack points out that he suffers from hypertension. Doc. 64 at 10. In *United States. v. Copeland*, the defendant, who was imprisoned for non-violent offenses, was forty-one years old and suffered from hypertension, No. 3:11-cr-281-J-34JBT, 2020 WL 4193554, at *1 (M.D. Fla. July 21, 2020). The Court noted that although the CDC lists hypertension as a medical condition that *might* increase the risk of severe illness from COVID-19, it is distinct from a medical condition that *does* increase the risk. *Id.* at *2. Furthermore, "hypertension is hardly an extraordinary condition." *Id.* According to the CDC, almost half of the adult population in the United States has high blood pressure or takes medication for it. *Id.* The Court denied the defendant's motion for compassionate release, finding that his hypertension was somewhat offset by his age and his receipt of medication to control it—therefore his high blood pressure was not a serious medical condition that

---

[16] *See United States v. Mathe*, No. 14-528, 17-92, 2020 WL 3542177, at *5 (E.D. Penn. June 30, 2020).

13

prevented him from being able to care for himself while imprisoned. *Id.*[17]

During Prack's most recent evaluation at the BOP's Health Services on August 25, 2020, Prack's blood pressure reading category was borderline between elevated and hypertension—a marked improvement from his previous visit where his blood pressure reading was significantly higher and could be categorized as Stage 2 hypertension.[18] Attachment F.[19] Similar to the above mentioned cases, Prack's medical records demonstrate that while incarcerated he has not only had access to medical care, but that he has also

---

[17] *See also* U*nited States v. Williams,* No. 8:18-cr-474-T-33TGW, 2020 WL 5076571, at *1-2 (M.D. Fla. Aug. 26, 2020) (compassionate release denied for thirty-six year old defendant that suffered from hypertension, high cholesterol, and respiratory issues, because increased vulnerability from COVID-19 was not an extraordinary and compelling reason to grant his request.); *United States v. Brantley*, No. 8:9-cr-132-T-33AAS, 2020 WL 5513571, at *2 (M.D. Fla. Sept. 14, 2020) (compassionate relief denied for defendant who suffered from hypertension, high cholesterol, and obesity, because failed to demonstrate that he had a serious medical condition that would substantially diminish his ability to provide care for himself while imprisoned.); *United States v. Hammonds*, No. 8:14-cr-406-T-60-TGW, 2020 WL 5526406, at *1-2 (M.D. Fla. Sept. 15, 2020) (compassionate release denied for defendant who suffered from hypertension, high cholesterol, and obesity, because he failed to present evidence that his medical conditions were terminal or that he would not be able to continue to manage his conditions while imprisoned.); *United States v. Martin*, No. 8:10-cr-305-T-33AEP, 2020 WL 5369083, at *2 (M.D. Fla. Sept. 8, 2020) (compassionate release denied for defendant who suffered from high blood pressure and hypertension, because his medical records demonstrated that his conditions were controlled with medication, and that he was able to care for himself while imprisoned.); *United States v. Cody*, No. 8:10-cr-35-T-27CPT, 2020 WL 4726707, at *1 (M.D. Fla. Aug. 13, 2020) (compassionate release denied for defendant who suffered from asthma and high blood pressure, because failed to demonstrate that his medical conditions adversely impacted his ability to care for himself while incarcerated.).

[18] *See* Centers for Disease Control and Prevention, *High Blood Pressure* (last reviewed September 8, 2020), https://www.cdc.gov/bloodpressure/facts.htm.

[19] Prack's medical records, Attachment F, are being filed contemporaneously with this response under seal.

been receiving medication to treat his hypertension. Additionally, there is no evidence that Prack's hypertension is uncontrolled or that it has in any way diminished his ability to provide self-care while imprisoned.

Third, Prack asserts that he has a history of type II diabetes. Doc. 64 at 10. Type II diabetes is one of the medial conditions recognized by the CDC that increases a person's risk of severe illness from COVID-19.[20] However, according to the American Diabetes Association, even though people with diabetes in general have a higher chance of experiencing complications from COVID-19, that risk is diminished if their diabetes is well-managed.[21]

The defendant in *United States v. Butler*, who was sixty-years old and suffered from hypertension, high blood pressure, and type II diabetes, filed a motion for compassionate release asserting that his health problems placed him at high-risk from COVID-19, No. 6:14-cr-243-Orl-28KRS, 2020 WL 3288089, at *3 (M.D. Fla. June 18, 2020). In denying his motion, the court acknowledged that even though the defendant's medical conditions are those

---

[20] *See* Centers for Disease Control and Prevention, *People with Certain Medical Conditions* (last updated September 11, 2020), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html.

[21] *See* American Diabetes Association, *How COVID-19 Impacts People with Diabetes* (last accessed September 22, 2020), https://www.diabetes.org/coronavirus-covid-19/how-coronavirus-impacts-people-with-diabetes#:~:text=Viral%20infections%20can%20also%20increase,contribute%20to%20more%20severe%20complications.

which the CDC has identified as increasing a person's risk of developing severe illness from COVID-19, he failed to identify a medical condition that fell within one of the categories in the Sentencing Commission's policy statement application note. *Id.*[22]

Similar to the cases above, Prack has failed to establish that his type II diabetes is severe enough to qualify as one of the circumstances that the policy statement's application note considers an extraordinary and compelling reason to warrant a reduction in sentence—it is not terminal and has not substantially diminished his ability to provide self-care at the correctional facility in which he currently is incarcerated. Prack's medical records show that he has been able to receive extensive medical treatment while incarcerated and that he has had access to medication to control his diabetes. Attachment F. On his most recent visit to health services, the provider noted that Prack's diabetes "is doing much better." *Id.* Additionally, Prack's medical records show that he has received a level of medical care to which he would most likely not have

---

[22] *See also United States v. Thomas*, No. 8:10-cr-423-T-33AAS, 2020 WL 5407711, at *3 (M.D. Fla. September 9, 2020) (compassionate release denied for sixty-two year old defendant that suffered from diabetes, high-blood pressure, and cardiovascular problems, because he failed to demonstrate that his medical conditions diminished his ability to care for himself while imprisoned); *United States v. Jeffers*, No. CR13-3033-LTS, 2020 WL 3100842, at *1-7 (N.D. Iowa June 11, 2020) (compassionate release denied for fifty-nine year old defendant that suffered from hypertension and diabetes, because both his conditions were well-controlled under BOP care and there was nothing to substantiate that he would receive better medical care if released); *United States v. Gamble*, No. 3:18-cr-0022-4(VLB), 2020 WL 1955338, at *4 (D. Conn. Apr. 23, 2020) (compassionate release denied for defendant who suffered from diabetes that was controlled by medication, because he failed to show that his medical conditions were extraordinary and compelling reasons for his release.).

access outside of prison. *Id*.

For the aforementioned reasons, neither Prack's age nor medical conditions rise to the level of severity required under the policy statement for extraordinary and compelling reasons. Prack's medical conditions are not terminal and they do not diminish his ability to provide self-care. In any event, the Bureau of Prisons ("BOP") has implemented a COVID-19 action plan to minimize the risk of transmission into and throughout its facilities.[23] Accordingly, potential COVID-19 exposure is not an extraordinary and compelling reason to grant Prack compassionate release.

The United States has contacted Coleman Low FCI, where Prack is housed. There are almost 2,000 inmates at that facility.[24] Contrary to what is alluded to in Prack's motion, widespread testing has been implemented at that facility, with over a quarter of the inmate population having been tested.[25] Overall, 282 inmates have tested positive at Coleman Low FCI, but as of September 23, 2020, there are 93 inmates and 22 staff members currently positive for COVID-19—less than 5% of the inmate population. *Id*. This is evidence that Coleman Low FCI has been diligent in his efforts to protect both

---

[23] *See* Updates to BOP Covid-19 Action Plan, available at https://www.bop.gov/resources/news/20200319_covid19_update.jsp (last updated March 19, 2020).

[24] *See* FCI Coleman Low, https://www.bop.gov/locations/institutions/col/ (last visited September 23, 2020).

[25] *See* Bureau of Prisons, https://www.bop.gov/coronavirus/ (last visited September 23, 2020).

inmates and staff. The facility employs a team of medical professionals and provides round-the-clock medical care. The facility is equipped to provide medical isolation when required.

By virtue of being in the BOP's custody, Prack is in the presence of medical professionals at all times. In the unlikely event that Prack becomes infected with COVID-19, he will be quarantined, monitored, and receive necessary medical treatment, wholly consistent with the CDC's guidelines. Importantly, Prack has not made a factual record that his medical needs will not be met while detained in the BOP.

**VIII.  Even if Prack could establish an extraordinary and compelling reason for compassionate release, the applicable section 3553(a) factors strongly weigh against granting him compassionate release.**

Setting COVID-19 concerns aside, this Court must deny release unless it determines the defendant "is not a danger to the safety of any other person or to the community." USSG §1B1.13(2). Additionally, this Court must consider the section 3553(a) factors, as "applicable," as part of its analysis.[26] The section 3553(a) factors in this case strongly weigh heavily against granting his release. Indeed, Prack would pose a danger to public safety if released. This Court should deny his compassionate release motion on that basis alone.

Prack's motion fails to acknowledge that he and his wife are members of the Outlaw Motorcycle Club ("Outlaws"). Doc. 52 at 6-7. His wife is a gun

---

[26] *See* section 3582(c)(1)(A); *United States v. Chambliss*, 948 F.3d 691, 694 (5th Cir. 2020).

enthusiast. Doc. 64 at 2. According to the National Gang Intelligence Center, the Outlaws are one of the largest motorcycle gangs in the country—notorious for their violence and criminal activity.[27] Attachment G at 22.

After bragging in undercover recordings about the firearms he possessed, Prack, a convicted felon, sold a firearm to a government source who had informed him that he was purchasing the weapon for a convicted felon who was unable to obtain one legally. Doc. 1 at 6-7.[28] Prack also kept an arsenal in his home. Doc. 52 at 5-7; Attachment H. When a search warrant was executed for his residence, the agents recovered twelve firearms—two of which were stolen, over a thousand rounds of ammunition, a drum magazine, and a weapon loaded with tear gas rounds. Doc. 52 at ¶¶ 18, 19, 20, 22, 25, 33; Attachment H. The guns were in Prack's bedroom, his dresser, and stored in a gun safe—the key to that safe hung openly in the kitchen. Doc. 52 at ¶¶ 18, 19. During the search, the agents also located illegal drugs, a Klu Klux Klan flag, numerous items of Nazi memorabilia, Outlaw Motorcycle Club banners and paraphernalia, a copy of the bylaw of the Outlaw Motorcycle Club, Prack's Outlaw Motorcycle Club leather jacket with a Nazi patch, and his wife's Outlaw Motorcycle Club jacket—with "Property of the Outlaws' emblazoned across the back. *Id.* at ¶ 21; Attachment H. Prack is *not* as he

---

[27] *See* Outlaw Motorcycle Gangs, slides 1-6, https://www.justice.gov/criminal-ocgs/gallery/outlaw-motorcycle-gangs-omgs?page=1 (last updated May 31, 2017).

[28] Prack's prohibiting felony convictions include aggravated battery, two counts of aggravated assault, and failure to register as a sex offender. Doc 52 at ¶¶ 53, 54.

claims—a person who simply made a mistake and who is unlikely to reoffend. If anything, he is a violent individual who is associated with an organization known for criminal activity.

Moreover, Prack was already sentenced below the guidelines. Doc. 56 at 2. Any further reduction in his sentence would not comport with the section 3553(a) factors, especially in light of his continued danger to the community.

## CONCLUSION

Prack has failed to exhaust his administrative remedies through the BOP; there are no "extraordinary and compelling reasons" to grant him relief; the section 3553(a) factors weigh heavily against his release; and he remains a threat to the safety of others and the community. Since he has not met his burden of proof, his motion must be denied.

Respectfully submitted,

MARIA CHAPA LOPEZ
United States Attorney


By:     */s/ Robert E. Bodnar, Jr.*
Robert E. Bodnar, Jr.
Assistant United States Attorney
Florida Bar No. 0989703
35 SE 1st Avenue, Suite 300
Ocala, Florida 34471
Telephone:   (352) 547-3600
Facsimile:   (352) 547-3623
E-mail:       robert.bodnar@usdoj.gov

**U.S. v. MARK ANTHONY PRACK**          **Case No. 5:16-cr-37-Oc-37PRL**

## CERTIFICATE OF SERVICE

I hereby certify that on September 23, 2020, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following:

Debra B. Tuomey, Esq., B.C.S

I hereby certify that on September 23, 2020, a true and correct copy of the foregoing document and the notice of electronic filing were sent by United States Mail to the following non-CM/ECF participant(s):

/s/ Robert E. Bodnar, Jr.
Robert E. Bodnar, Jr.
Assistant United States Attorney
Florida Bar No. 0989703
35 SE 1st Avenue, Suite 300
Ocala, Florida 34471
Telephone:   (352) 547-3600
Facsimile:    (352) 547-3623
E-mail:        robert.bodnar@usdoj.gov